IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Luis Miguel Montoya Villagomez,    ) | |
| ) | C/A No. 1:21-0309-MBS |
| Petitioner,    ) | |
| ) | |
| vs.    ) | |
| ) | **ORDER AND OPINION** |
| Stevie Knight, Warden,    ) | |
| ) | |
| Respondent.    ) | |
| _____) | |

Petitioner Luis Miguel Montoya Villagomez is a federal inmate who currently is housed at FPC-Estill in Estill, South Carolina. Petitioner, proceeding pro se, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 on February 1, 2021. Petitioner seeks an order directing Respondent Stevie Knight to apply 365 days of earned time credit against Petitioner's sentence. In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02, D.S.C., this matter was referred to United States Magistrate Judge Shiva V. Hodges for pretrial handling.

On April 28, 2021, Respondent filed a motion for summary judgment, asserting that Petitioner had failed to exhaust his administrative remedies, and that, in any event, Petitioner's § 2241 petition is premature. On April 28, 2021, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), Petitioner was advised of the summary judgment procedures and the possible consequences if he failed to respond adequately. Petitioner filed a response in opposition on June 7, 2021. On June 16, 2021, the Magistrate Judge issued a Report and Recommendation in which she recommended that Respondent's motion for summary judgment be granted. Petitioner filed a motion for oral argument on July 2, 2021, as well as objections to the Report and Recommendation on July 8, 2021.

The Magistrate Judge makes only a recommendation to this court. The recommendation has

no presumptive weight. The responsibility for making a final determination remains with this court. Mathews v. Weber, 423 U.S. 261, 270 (1976). This court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. 28 U.S.C. § 636(b)(1). This court may also receive further evidence or recommit the matter to the Magistrate Judge with instructions. Id. This court is obligated to conduct a de novo review of every portion of the Magistrate Judge's report to which objections have been filed. Id.

## DISCUSSION

Petitioner's § 2241 petition concerns the implementation of a provision of the First Step Act of 2018 that provides a means for federal inmates to earn time credit to be applied toward their sentences. Under 18 U.S.C. § 3632(a), the Attorney General, in consultation with the Independent Review Committee authorized by the First Step Act, is tasked with developing a risk and needs assessment system not later than 210 days after the date the First Step Act was enacted to:

> (1) determine the recidivism risk of each prisoner as part of the intake process, and classify each prisoner as having minimum, low, medium, or high risk for recidivism;
>
> (2) assess and determine, to the extent practicable, the risk of violent or serious misconduct of each prisoner;
>
> (3) determine the type and amount of evidence-based recidivism reduction programming that is appropriate for each prisoner and assign each prisoner to such programming accordingly, and based on the prisoner's specific criminogenic needs, and in accordance with subsection (b);
>
> (4) reassess the recidivism risk of each prisoner periodically, based on factors including indicators of progress, and of regression, that are dynamic and that can reasonably be expected to change while in prison;
>
> (5) reassign the prisoner to appropriate evidence-based recidivism reduction programs or productive activities based on the revised determination to ensure that--
>
>> (A) all prisoners at each risk level have a meaningful opportunity to reduce

>   their classification during the period of incarceration;
>
>   (B) to address the specific criminogenic needs of the prisoner; and
>
>   (C) all prisoners are able to successfully participate in such programs;
>
> (6)  determine when to provide incentives and rewards for successful participation in evidence-based recidivism reduction programs or productive activities in accordance with subsection (e);
>
> (7) determine when a prisoner is ready to transfer into prerelease custody or supervised release in accordance with section 3624; and
>
> (8)  determine the appropriate use of audio technology for program course materials with an understanding of dyslexia.

Eligible prisoners are incentivized to participate by the promise of additional phone privileges and visitation at the prison. Id. § 3632(d)(1). Successful prisoners also are considered by the Bureau of Prisons (BOP) for placement in a facility closer to the prisoner's release residence, as well as increased commissary spending limits and product offerings, increased access to the email system, and consideration of transfer to preferred housing units. Id. § 3643(d)(2), (3). A prisoner earns time credit as follows:

> (i) A prisoner shall earn 10 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.
>
> (ii) A prisoner determined by the Bureau of Prisons to be at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.

Id. § 3632(d)(4).

The Attorney General published the Prisoner Assessment Tool Targeting Risk and Needs (PATTERN) risk assessment system on July 19, 2019. See https://www.bop.gov/inmates/fsa/

pattern. jsp (accessed December 17, 2021). The BOP then had 180 days, or until January 15, 2020, to

> (A) implement and complete the initial intake risk and needs assessment for each prisoner (including for each prisoner who was a prisoner prior to the effective date of this subsection), regardless of the prisoner's length of imposed term of imprisonment, and begin to assign prisoners to appropriate evidence-based recidivism reduction programs based on that determination;
>
> (B) begin to expand the effective evidence-based recidivism reduction programs and productive activities it offers and add any new evidence-based recidivism reduction programs and productive activities necessary to effectively implement the System; and
>
> (C) begin to implement the other risk and needs assessment tools necessary to effectively implement the System over time, while prisoners are participating in and completing the effective evidence-based recidivism reduction programs and productive activities.

18 U.S.C. § 3621(h)(1).

> The BOP is allowed a phase-in period wherein it shall, among other things:
>
> (A) provide such evidence-based recidivism reduction programs and productive activities for all prisoners before the date that is 2 years after the date on which the Bureau of Prisons completes a risk and needs assessment for each prisoner under paragraph (1)(A); and
>
> (B) develop and validate the risk and needs assessment tool to be used in the reassessments of risk of recidivism, while prisoners are participating in and completing evidence-based recidivism reduction programs and productive activities.

Id. § 3621(h)(2).

Priority for such programs and activities during the two-year period described in § 3621(h)(2)(A) is accorded based on the prisoner's proximity to release date. Id. § 3621(h)(3).

Significant to the within § 2241 petition, § 3621(h)(4) provides:

> Beginning on the date of enactment of this subsection, the Bureau of Prisons may begin to expand any evidence-based recidivism reduction programs and productive

   activities that exist at a prison as of such date, <u>and may offer to prisoners who successfully participate in such programs and activities the incentives and rewards described in subchapter D.</u>

(emphasis added).

  Petitioner asserts that he has earned 365 days of time credits. Petitioner's current projected release date is August 31, 2023. According to Petitioner, application of 365 days of time credits would entitle him to immediate transfer to pre-release status to include placement in a residential reentry center or home confinement. Respondent asserts that some programming claimed by Petitioner is not eligible for time credits pursuant to § 3632.[1] In any event, Respondent argues that summary judgment should be granted in its favor because (1) Petitioner has not exhausted his administrative remedies; and (2) Petitioner's request is premature because the BOP is not obligated to provide rewards to prisoners who have successfully participated in evidence-based recidivism reduction (EBRR) programs until the termination of the phase-in period, January 15, 2022.

A. <u>The Magistrate's Judge's Report and Recommendation</u>

  1. <u>Exhaustion of Administrative Remedies</u>. The Magistrate Judge observed that courts consistently require prisoners to exhaust their administrative remedies prior to seeking habeas review under § 2241. ECF No. 20, 5 (citing <u>Braen v. 30th Judicial Circuit Court</u>, 410 U.S. 464, 490-91 (1973); <u>McClung v. Shearin</u>, 90 F. App'x 444, 445 (4th Cir. 2004)). The Magistrate Judge noted that, when a federal inmate seeks to complain about any aspect of his confinement, he must follow

---

[1]There appears to be a conflict between 18 U.S.C. § 3632(d)(4)(B), which provides that prisoners may not earn time credits for EBRR programs completed before the date of enactment of the First Step Act, December 21, 2018, and the BOP's position that time credits may be earned only with respect to EBRR programs successfully completed on or after January 15, 2020, the date PATTERN was implemented. See https://www.bop.gov/inmates/fsa/faq.jsp#fsa_time_credits (accessed December 6, 2021). This discrepancy underlies Respondent's rejection of Petitioner's calculated time credits.

5

a four-step administrative grievance process. First, he must attempt to resolve the matter informally at the institution by presenting an issue of concern to staff. If informal resolution is not successful, the inmate may submit a written Administrative Remedy Request (Form BP-9) for review by the Warden. If the inmate is not satisfied with the Warden's response, he may appeal the decision in writing to the appropriate Regional Director through a Regional Administrative Remedy Appeal (Form BP-10). The final step is an appeal in writing to the General Counsel through a Central Office Administrative Remedy Appeal (Form BP-11). Appeal to the General Counsel is the final administrative appeal. See 28 C.F.R. §§ 542.10 et seq.; Administrative Remedy Program, Program Statement No. 1330.18.

Petitioner provided evidence that he filed an informal resolution documentation form and a Form B-9. ECF No. 1-1, 3-5. Petitioner does not dispute that he failed to pursue the appeal process.[2] Instead, Petitioner argues that he is exempt from the exhaustion requirement because further attempts to obtain administrative relief would be futile.

The Magistrate Judge observed that exhaustion of an administrative remedy is futile when the BOP has predetermined the issue, or where requiring the prisoner to exhaust would cause him irreparable harm because he is entitled to be released from prison. The Magistrate Judge determined that Petitioner arguably has alleged irreparable harm because he contends he is entitled to immediate transfer from BOP custody to pre-release custody. The Magistrate Judge found, however, that the court need not resolve the exhaustion issue because Petitioner's underlying claim is without merit.

2.     Application of Earned Time Credits.  The Magistrate Judge reviewed the language

---

[2]The BOP indicates Petitioner appealed to the Regional Office on February 2, 2021, after the within petition was filed.

of § 3621(h)(4) and determined that utilization of the term "may" indicated Congress's intent that the BOP exercise its discretion in deciding whether to offer prisoners incentives and rewards during the phase-in period. The Magistrate Judge observed that only one court has issued an opinion supporting Petitioner's argument the BOP is mandated to offer incentives and rewards during the phase-in period. In Goodman v. Ortiz, Civ. No. 20-7582 (RMB), 2020 WL 5015613 (D.N.J. Aug. 25, 2020), the New Jersey district court observed that § 3621(h)(1)(C) anticipated some prisoners would complete the EBRR programs within the two-year phase-in period. Goodman, 2020 WL 5015613, at *5. The New Jersey district judge found that, "by making it a priority to provide the programs to prisoners based on proximity to their release dates, the statute makes it clear that prisoners who earned sufficient time credits during the phase-in period could be released prior to the end date for the two-year phase-in." Id. at *6. The New Jersey district judge reasoned:

> The Court finds no evidence in the statutory framework for delaying application of incentives earned by all prisoners during the phase-in program until January 15, 2022, the final date when BOP must complete the phase-in with respect to "all prisoners." See § 3621(h)(2)(A). Even the use of the words "all prisoners" indicates that all prisoners must be afforded the PATTERN program but does not exclude that some prisoners will participate in, earn incentives and complete the program before the end of the phase-in period. Indeed, the Attorney General's January 15, 2020 memo and BOP's "Frequently Asked Questions" describing the PATTERN program incentives are consistent with this interpretation. The ordinary meaning of "phase-in" combined with analysis of the statutory framework of § 3621(h) unambiguously supports the conclusion that the BOP must gradually implement the risk recidivism program, including the priority application of incentives to prisoners whose release dates are nearer, such as Petitioner.

Goodman, 2020 WL 5015613, at *6.

The Magistrate Judge noted that in Workman v. Cox, 4:20-CV-04197-LLP, 2021 WL 1080396 (D.S.D. Jan. 13, 2021), the South Dakota district judge agreed with the reasoning of Goodman. However, the district judge distinguished Goodman on the grounds that the BOP did not

7

dispute Goodman's assertion he earned sufficient EBRR time credits to be entitled to immediate release. The BOP in Workman challenged Workman's computation of his time credits, and for this reason the Workman court found Goodman to be inapposite. The Workman court intimated that it would have applied the Goodman analysis had the facts been on point.

The Magistrate Judge noted that a majority of courts have rejected the Goodman court's analysis, concluding instead that the BOP has the discretion, but is not required, to offer incentives and rewards prior to January 15, 2022.³ According to the Magistrate Judge, the Goodman and

---

³    A number of courts have distinguished Goodman on the grounds that, in Goodman, the BOP did not oppose Goodman's calculation that he had earned 120 days of credit against his sentence. Rather, the BOP opposed the petition on the ground that Congress had granted it until January 15, 2022, to phase in the FSA program. In Fleming v. Joseph, Case No. 3:20cv5990-LC-HTC, 2021 WL 1669361 (N.D. Fla. Apr. 7, 2021), for example, the judge noted that, in order to intervene, it would need to address the following questions, which were unanswered in the record:

(1) What need areas have BOP staff determined Fleming to have?

(2) Since January 15, 2020, what EBRR programs and productive activities have BOP staff assigned Fleming to do, based on those needs?

(3) Of the assigned EBRR programs and productive activities, which have Fleming completed?

(4) For purposes of defining "30 days of successful programming," how many days of programming has the Bureau determined each EBRR program or program activity to be?

(5) Is Fleming eligible to currently "apply" his credits under § 3624(g)(1)?

(6) In applying any time credits Fleming has earned, will the Bureau exercise its discretion to place Fleming on supervised release versus into a pre-release placement under § 3624(g)(1)?

Fleming, 2021 WL 1669361, at *5. See also Jones v. Thompson, No. 2:21-cv-0403, 2021 WL 5397711 (E.D. Cal. Nov. 18, 2021); Gonzalez v. Spaulding, No. 1:21-CV-0835, 2021 WL 5103903 (M.D. Pa. Oct. 18, 2021); Depoister v. Birkholz, Civ. No. 21-684 ECT/BRT), 2021 WL 3493692 (D. Minn. Jul. 8, 2021).

Workman courts relied upon a Congressional mandate that does not exist. The Magistrate Judge concluded that the plain language of the relevant statutes and the weight of authority do not support a finding that the BOP is obligated to award time credits prior to January 15, 2022.[4]

B.     Petitioner's Objections to the Report and Recommendation.

Petitioner asserts the Magistrate Judge erred in concluding that the BOP has until January 15, 2022 to credit inmates for their EBRR participation. Petitioner asserts that January 15, 2022, is the time period by which the program should be fully operable. Petitioner states his argument is supported by the fact that inmates are entitled to credits dating back until December 21, 2018, the date the First Step Act was signed into law.

On October 1, 2021, the court directed the parties to provide the court with a complete itemization of activities they each contend meet First Step Act requirements. The BOP filed a response on November 4, 2021.[5] Petitioner filed a reply on November 8, 2021, which he supplemented on November 17, 2021.

The court notes that the facts underlying Petitioner's petition align with the peculiar circumstances of the petitioner in Goodman. In Goodman, the district judge listed the following

---

[4]The Attorney General's annual report indicates that the COVID-19 pandemic has required some EBRR programs to be suspended and capacity in others reduced to allow for social distancing and to prevent spreading of the virus. See The Attorney General's First Step Act Section 3634 Annual Report, 19 (December 2020). Because of the decrease in EBRR programs, no time credit releases had occurred as of the date of publication. Id. at 23, 45; see also id. at 48 (Appendix A, Impact of the COVID-19 Pandemic on FSA Programming).

[5]In its response to the court's order, the BOP for the first time asserts that Petitioner has earned only 32 hours, or 4 days, of credit. The BOP states, "[a]lthough other programs have been completed and appear on his records, he does not have an associated need for those programs." ECF No. 29, 2. The court is at a lost to explain the BOP's position vis-a-vis the Case Manager's report.

9

facts as not disputed:

> • Petitioner is eligible for earned credits under the First Step Act ("the Act"). (Answer at 5 n.2, Dkt. No. 4);
>
> • Petitioner's Case Manager did an initial needs assessment and found him to be at a "low" risk of recidivism, satisfying the requirement in 18 U.S.C. § 3632(a)(1). (Pet. Aff. ¶1.3, Dkt. No. 1-2);
>
> • Petitioner was assessed as a low risk of recidivism for a second time on May 12, 2020, entitling him to 15 days of time credits for every 30 days of Programming under 18 U.S.C. § 3632. (Pet. Aff. ¶¶ 4.2-4.3, Dkt. No. 1-2; Ex. 3, Dkt. No. 1-1 at 10);
>
> • A Case Manager "determined and assigned [Programming] Activities" for Petitioner at meetings held on November 26, 2019 and January 20, 2020. (Pet. Aff. ¶¶ 2.2, Dkt. No. 1-2; Ex. 1, Dkt. No. 1-1 at 1-2);
>
> • These assignments met the requirements of the Act, and the Case Manager explicitly confirmed to Petitioner that they qualified under the Act. (Pet. Aff. ¶¶ 3-3.2, Dkt. No. 1-2; Ex. 2, Dkt. No. 1-1 at 3-9);
>
> • Petitioner successfully participated (and continues to participate) in this programming. (Id.)
>
> • Petitioner has accumulated 240 days of credit, which under 18 U.S.C. §§ 3632(d)(4), 3635 serves to reduce his sentence by 120 days. (Pet. Aff. ¶¶ 4.4; 5.1-5.3, Dkt. No. 1-2.)
>
> • If Petitioner's days of credit are applied upon program completion, under 18 U.S.C. §§ 3632(d)(4), 3635, he should have been released on July 5, 2020. (Pet. Aff. ¶ 4.4, Dkt. No. 1-2.)

Goodman, 2020 WL 5015613, at *2.

Here, Petitioner has provided evidence analogous to that found to be determinative in

Goodman:

> • Petitioner is eligible for earned credits under the First Step Act. (ECF No. 14-1, 9 at n.7);
>
> • Petitioner's Case Manager did an initial needs assessment on May 29, 2020 and found him to be at a "low" risk of recidivism, satisfying the requirement in 18 U.S.C. § 3632(a)(1).

10

(ECF No. 14-2, 108; );

• Petitioner was assessed as a low risk of recidivism for a second time on June 27, 2020, entitling him to 15 days of time credits for every 30 days of Programming under 18 U.S.C. § 3632. (ECF No. 14-2, 108); Petitioner most recently was assessed as a low risk of recidivism on October 27, 2021 (ECF No. 32-1, 15);
• A Case Manager reported on November 4, 2021:

Montoya-Villagomez completed the Money Smart class on 05-24-2021, and he has received 500 hours of EBRR program credits for MNA work. He has also completed the Release Orientation Program on 07-15-20[2]1. He is currently enrolled in the Inside Out Dad class, and displays satisfactory progress. He completed Emotional Self-Regulation FSA group on 06/30/2021. He is attending Non-Residential Specialty Group; Prosocial Lifestyle. He has completed the following speciality groups: Maintaining [M]y Recovery and Strengthening My Parenting Skills. Montoya has successfully completed the following First Step Act Group offered by Psychology Services: Victim Impact 06/02/2021. He is currently taking the Drug Education class voluntarily. He translates for the Spanish Speaking inmates. He is a valuable asset to the class. He has a verified GED, and is no longer recommended to enroll in the Literacy Program. It should be noted the he was enrolled in the Critical Thinking class at his last Program Review, but it was not offered through the Psychology. (ECF No. 32-1. 13);

• According to Petitioner's Case Manager:

Recommended Placement in range greater than 270 days.
Consideration has been given for Five Factor Review (Second Chance Act);
- Facility Resources: Facilities resources are available in the area of release: Riverdale, Georgia
- Offense: Possession with Intend to Distribute Methamphetamine
- Prisoner: 28 years of age, White, Male, Hispanic, FRP Complete
- Court Statement: Upon Release from imprisonment, supervised release for a term of 3 years
- Sentencing Commission: Western District of Tennessee

Relocation approved for the Northern District of Georgia.

See ECF No. 32-1, 13.

In other words, the concerns articulated by the Fleming court – that the record is incomplete – are not present. Nevertheless, the court is compelled by the discretionary language of §

11

3632(d)(4)(A) to conclude that it cannot demand the BOP award Petitioner's earned time credits before January 15, 2022. The court strongly recommends the BOP consider awarding credits prior to January 15, 2022, as appropriate.

## CONCLUSION

The court adopts the Report and Recommendation and incorporates it herein by reference. The BOP's motion for summary judgment (ECF No. 14) is **granted**. Petitioner's § 2241 petition is **denied and dismissed**. Petitioner's motion for oral argument (ECF No. 23) also is **denied**.

## CERTIFICATE OF APPEALABILITY

A certificate of appealability will not issue absent "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A prisoner satisfies this standard by demonstrating that reasonable jurists would find that any assessment of the constitutional claims by the district court is debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003); Rose v. Lee, 252 F.3d 676, 683-84 (4th Cir.2001). The court concludes that Petitioner has not made the requisite showing. Accordingly, the court **denies** a certificate of appealability.

**IT IS SO ORDERED.**

/s/ Margaret B. Seymour
Senior United States District Judge

Columbia, South Carolina

December 17, 2021.